**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Criminal No.: ELH-20-09** |
| **MICHAEL DAVIS, JR.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE**
**AND SUBMISSION IN ADVANCE OF THE DETENTION HEARING**

The Defendant, Michael Davis, Jr., through counsel, Jonathan P. Van Hoven, hereby replies to the government's submission filed in opposition to Mr. Davis's request to be released pending final adjudication of this case. The United States Attorney is unreasonably opposing a very routine request for pre-trial release where under normal circumstances this would not even be a hotly-contested matter. Similarly-situated people are routinely released in this District with conditions that reasonably assure no danger to the community or risk of flight. More disturbing is that its response in this routine initial detention hearing is in lock-step with the United States Attorney's cookie cutter opposition to individuals requesting a review of detention in the middle of this national pandemic. It is true that Mr. Davis is requesting his hearing now in part due to his unfortunate happenstance of being housed in the D.C. Department of Corrections where the COVID-19 virus is now rapidly infecting inmates and spreading without any reasonable safe-guarding measures in use. Thus, he is grateful that he has his hearing tomorrow rather than even a week from now. However, there are multiple other reasons that warrant his release. For clarity and expediency, undersigned counsel will attempt to address the Government's opposition in the same order as presented in their submission.

In sum, Mr. Davis was indicted and arrested for this non-violent drug offense that, based on discovery received so far, was conducted at the street-level from his bicycle. Mr. Davis as

34 year old Baltimore resident with no prior criminal convictions. He is a supportive parent of four young children with whom he has continuous personal contact. He has a record of gainful employment since the age of 18 with strong local family ties and no previous travel outside of the United States.

Mr. Davis has a close relationship with his girlfriend, the proposed third party custodian. As noted by Pretrial, she is a full-time employee of a national pizza restaurant franchise, having successfully graduated from drug treatment court after a prior conviction from over 12 years ago.[1] He would have also had the option of staying with his own mother were it not for his ineligibility to reside with her due to housing assistance rules.

To be clear, there has been no prior detention hearing for Mr. Davis. He initially consented to detention until such time that he requested one. The March 30 hearing is his first contested detention hearing. This is classified as a "presumption case" with regard to determining the existence of conditions of release to assure the safety of the community. However, the burden to overcome the presumption is not great and once rebutted, the Bail Reform Act mandates pretrial release unless there is no set of conditions that can reasonably assure a person's appearance or community safety. *See* 18 U.S.C. § 3142.

None of the cases cited by the Government in its submission are similar to Mr. Davis's in terms of the individualized facts, procedural posture or current status of COVID-19. In all of those cited cases from this District, the defendants were seeking a review of prior orders of detention based on concerns of a potential outbreak of COVID-19 in the local jails prior to any proof that an actual

---

[1]As to the government's allegations of misconduct on her part, counsel will address them at the appropriate juncture of the proceedings tomorrow.

outbreak occurred. The last several days have changed everything. As the Court is likely well aware, as of this filing, there are now five confirmed cases of COVID-19 in the D.C. Department of Corrections. The number will almost certainly skyrocket when other quarantined inmates (and there are dozens at this point) who were directly exposed to these four individuals are properly tested.

Mr. Davis has represented to counsel that he suffers from bronchitis. Due to the current crisis, it has been difficult for undersigned counsel to obtain historical records of Mr. Davis's condition. He is terrified that this condition, ignored by staff, will make him extremely vulnerable to the lethal nature of COVID-19.

District and Magistrate Judges in the United States District Court for the District of Columbia are quite familiar with DDOC facilities because detainees in that District are typically housed in DDOC facilities. In recent weeks there have been a number of release orders in District of D.C. cases based upon health concerns in DDOC facilities raised by the coronavirus pandemic, and many have come in cases with serious charges, including firearms, drug trafficking, and 18 U.S.C. § 924(c) counts. *See United States v. McLean*, No. 19-cr-00380 RDM, Dkt. No. 21 (D.D.C. March 28, 2020) (granting emergency motion for release after earlier detention order in 18 U.S.C. § 922(g), 21 U.S.C. § 841(b)(1)(C), and 18 U.S.C. § 924(c) case based on COVID-19 threat where defendant is 55 years old and suffers from diabetes); *United States v. Harris*, No. 19-cr-00356-RDM, Dkt. No. 35 (D.D.C. March 27, 2020) (granting emergency motion for release pending sentencing in distribution of child pornography case based on COVID-19 threat); *United States v. Hutchings*, No. 19-cr-00361-BAH, Dkt. No. 41 (D.D.C. March 26, 2020) (setting conditions of release after earlier detention order in conspiracy to defraud United States case based on COVID-19 threat); *United States v. Jaffee*, No. 19-cr-0088-RDM (D.D.C. March 26, 2020) (setting conditions of release after earlier detention order in

18 U.S.C. § 922(g), 21 U.S.C. § 841(b)(1)(D), and 18 U.S.C. § 924(c) case based on weight of evidence and COVID-19 threat); *United States v. Walker*, No. 20-cr-00060-TFH, Dkt. No. 16 (D.D.C. March 20, 2020) (setting conditions of release on consent after earlier detention order in 18 U.S.C. § 922(g) case based on COVID-19 threat and defendant's medical condition); *United States v. Courtney*, No. 19-cr-00413-TJK, Dkt. No. 27 (D.D.C. March 20, 2020) (setting conditions of release on consent after earlier detention order in 18 U.S.C. § 922(g) case based on COVID-19 threat and defendant's "unique medical concerns"); *United States v. Jones*, No. 19-cr-00362-CRC, Dkt. No. 15 (D.D.C. March 19, 2020) (setting conditions of release on consent after earlier detention order in threats against president case based on COVID-19 threat) ; *United States v. Nash*, No. 13-cr-00293-BAH, Dkt. No. 27 (D.D.C. March 16, 2020) (terminating supervised release and ordering immediate release from D.C. Jail in 18 U.S.C. § 922(g) case based upon COVID-19 threat where defendant is 64 and suffers from asthma and diabetes).

Other courts around the country have also recognized that more liberal standards for release are necessary to sufficiently reduce and protect the jail population. *See, e.g., United States v. Stephens*, 1:15-cr-00095 (AJN), Doc. No. 2798 (S.D.N.Y. Mar. 19, 2020) (acknowledging the changed circumstances from the defendant's initial detention determination included that "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent" and that "inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop"); *United States v. Barkman*, 3:19-cr-0052-RCJ-WGC, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (taking into account the COVID-19 pandemic to modify confinement as a probation condition and noting that "while measures are being taken by facilities all over the world, no facility is prepared… [the correctional facility] simply lacks the resources necessary to engage in

aggressive screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility."); *In re. Extradition of Alejandro Toledo Manrique*, No. 19MJ71055MAG1TSH, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) (ordering release taking into account the "risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail" despite the jail facility's "detailed" management plan for COVID-19 and assertions that the facility had no confirmed COVID-19 cases); *United States v. Raihan*, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12-19 (E.D.N.Y. Mar. 12, 2020) (allowing the defendant to remain on pretrial release rather than remanding to the detention center while recognizing that "the more people we crowd into that facility, the more we're increasing the risk to the community.").

Additionally, it appears that based on recent events and new information that has come to light in the past few days, the information that has been provided and summarized by the government regarding so-called precautionary measures implemented at the D.C. Department of Corrections (DDOC) is far from accurate. The best proof comes from the guards themselves as summarized in today's press release from the Fraternal Order of Police Department of Corrections Labor Committee, attached as Exhibit A. To summarize:

1. The correctional officers' own union is claiming that quarantines have not been and are not currently being properly utilized, and tracing and investigations have been woefully ineffective;

2. Local D.C. government leadership have rejected efforts by the union to have a dialogue to share their concerns;

3. Correctional officers are not even being provided PPE because they "do not provide medical care."

4.      PPE is, however, being hoarded by supervisors;

5.      Cleaning and disinfection, delegated to inmates, is wholly inadequate;

6.      Administrative staff in a separate building are engaged in their own self-protection;

7.      Testing for COVID-19 among officers is inadequate and a severe shortage of offices is imminent;

8.      The spread of illness in the jail far exceeds that in the general population;

9.      Guards are now sheltering in place and leaving it up to the inmates to take care of themselves.

10.      The very officers in charge of the inmates are considering the management situation at the jail to be a "crisis."

Under all of these circumstances, even if this matter were a close call in weighing all factors under the Bail reform Act, the best course of action is to release someone like Mr. Davis. There would be one less inmate in a crisis situation at the jail that is only going to get worse. In the current climate, the less inmates in jail, the better for everyone involved.

Lastly, the government argues that releasing someone such as Mr. Davis would place an undue burden on the Pretrial Services and the Courts. The Bail Reform Act and due process forbids categorical denial of Pretrial Release because of generalized concerns about Pretrial Services' bandwidth. The Act requires an individualized determination of each defendant's circumstances. *See* 18 U.S.C. § 3142; *see also United States v. Diaz-Hernandez*, 943 F.3d 1196 (9th Cir. 2019) (citing *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) ("The court may not, however, substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform

Act."); *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010); *United States v. Gloster*, 969 F.Supp. 92 (D.D.C. July 3, 1997).

The statute does not contemplate, and indeed due process forbids, categorical denial of pretrial release because of generalized concerns about the current workload of Pretrial Services. The Bail Reform Act was enacted decades before electronic monitoring devices were utilized by the courts. If Pretrial Services is unable to use electronic monitoring because of the health risks associated with its setup, then the Court should impose alternative location monitoring and home incarceration conditions that achieve its objective.

Respectfully submitted,

/s/

_____
Jonathan P. Van Hoven
One North Charles Street
Suite 1215
Baltimore, MD 21201
(410) 576-0689

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of March, 2020, a copy of the foregoing Motion was filed via ECF.

/s/

_____
Jonathan P. Van Hoven

-7-